IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | | |
|---|---|---|
| BOB SUSTR, and | ) | |
| PAVLA SUSTR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-1215-WEB |
| | ) | |
| KEIM TS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Memorandum and Order**

Plaintiffs filed this action claiming the defendant breached a contract between the parties.  The complaint alleges that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.  The matter is now before the court on the defendant's motion to dismiss, which argues that the amount in controversy is in fact less than $75,000, and that the court thus lacks jurisdiction.

I.  *Summary of Complaint*.

The complaint was filed on July 14, 2005.  It alleges that the plaintiffs are citizens of Colorado.  Doc. 1, ¶ 2.  The defendant Keim TS, Inc. ("Keim"),  is a Kansas corporation.  ¶ 3.   Keim is a flatbed trucking company that operates about 200 trucks from three Midwestern locations.  ¶ 7.  Plaintiff Bob Sustr is an independent truck driver who developed business relationships at Ford New Holland plants in Pennsylvania and Nebraska.  ¶ 6.   In 1997, Bob Sustr approached Keim and offered to establish a shipping relationship between Keim and these two Ford New Holland plants.  In consideration of

establishing this relationship, Mr. Sustr proposed that Keim would pay to the plaintiffs 8% of the gross revenue Keim received on each load Keim shipped from these plants.  ¶ 8-9.  Keim accepted the offer, and on or about June 27, 1997, the parties entered into a written contract.  Doc. 1, Exh. A.  The Agreement stated in pertinent part:

> These are the following terms that we will agree to:
>
> 1.  Contract between Keim TS, Inc.[1] and Bob and Pavla Sustr will last as long as shipments will be moving from Ford New Holland, Grand Island, Nebraska and Ford New Holland, Pennsylvania.
>
> 2.  Any load from Ford New Holland, Grand Island, Nebraska as well as from Belleville, Pennsylvania will be paid from 8% Gross Revenue to Bob and Pavla Sustr.

According to the complaint, from 1997 to August 2004 the defendant paid plaintiffs 8% of the gross revenue from all loads hauled from these plants.  ¶ 14.  At some point, Keim stopped hauling loads for the Nebraska Ford New Holland Plant.  ¶ 15.  Keim continues to haul loads for the Pennsylvania Ford New Holland plant and intends to do so for the foreseeable future.  ¶ 16-17.  In August 2004, however, Keim stopped making payments to the plaintiffs.  ¶ 18.

Plaintiffs allege that Keim's failure to pay is a breach of the contract.  ¶ 21.  The complaint states that plaintiffs' "current damages are unknown due to defendant's refusal to provide information concerning applicable loads.  It is believed that the evidence will show that plaintiffs' damages at the time of trial, assuming trial will occur in approximately 12 months, are in excess of $75,000."  ¶ 23.  Additionally,

---

[1] The Agreement states in typewritten letters that it is between the plaintiffs and "Keim Transportation, Inc.," but on the copy of the Agreement attached to the complaint "Transportation, Inc." has a line drawn through it and "TS, Inc." is hand-written above it.  The Agreement purports to be signed by the plaintiffs and by an individual on behalf of "Keim TS, Inc."   Doc. 1, Exh. 1.

2

plaintiffs request a declaratory judgment that the contract is enforceable and that defendant must pay 8% of gross revenue of any load hauled from either of the Nebraska or Pennsylvania plant for as long as shipments are hauled by defendant from either of those plants.  ¶ 25.  Alternatively, plaintiffs seek an order directing the defendant to pay plaintiffs' future lost commissions or income.  According to the complaint, "Plaintiffs reasonably and in good faith believe that the evidence will establish that their damages [for] future lost commissions/income will exceed $75,000."  ¶ 27.

II.  *Motion to Dismiss*.

The defendant moves to dismiss the case for lack of subject matter jurisdiction, arguing that the amount in controversy is less than $75,000.  As support, defendant cites a spreadsheet allegedly showing all shipments from August 11, 2004 to the present date from both the Nebraska and Pennsylvania Ford New Holland plants.  Defendant also provides an affidavit of Keim's acting-president, Stan G. Keim, which states (among other things): that prior to August 2004, defendant stopped hauling loads from the Nebraska plant and has not hauled any load from there since; that from August 11, 2004 through August 10, 2005, 8 percent of the total gross revenue on shipments from the Pennsylvania New Holland plant totals $33,732.25; and that defendant has not shipped any loads from the Pennsylvania plant since August 10, 2005 and has ceased its business transactions with the Pennsylvania plant.  Doc. 9, Exh. 1.  Defendant thus argues that plaintiffs' damages at most are $33,732.25.  Furthermore, "Defendant has ceased all business dealing at the Nebraska and Pennsylvania plants, and, as such, there can be no future lost commissions as alleged by plaintiffs."  Doc. 9 at 5-6.

In response, plaintiffs argue that "the fundamental flaw in Keim's argument is that it has failed to acknowledge the duty of good faith and fair dealing imposed on the parties to any contract in Kansas."

Doc. 15 at 6.  Plaintiffs say they "reasonably believe[] the evidence will show that (a) the only reason Keim stopped hauling from [Pennsylvania] was to avoid paying Sustr, (b) Keim would not have stopped hauling if Sustr had not filed this action, and (c) Keim intends to resume hauling from [Pennsylvania] as soon as this dispute is resolved."  *Id*. at 7.  Plaintiffs argue that a reasonable jury could find that Keim violated the duty of good faith and that plaintiffs are entitled to recover damages for loss of future income equivalent to several years' worth of commissions.  Based on historical numbers, plaintiffs say that an award of just two years' worth of lost commissions together with the $33,732.25 owing for past damages would result in damages of over $100,000.  *Id*.  Plaintiffs thus contend the amount in controversy exceeds $75,000.

Defendant's reply points out that plaintiffs do not dispute Stan Keim's affidavit indicating that plaintiffs' potential share of commissions from Pennsylvania shipments as of August 10, 2005, amounts to no more than $33,732.25.  As for plaintiffs' allegation of a breach of the duty of good faith, defendant argues that plaintiffs have set forth no evidence to back up such a claim and that "[t]here exists not a shred of evidence that these allegations are indeed true."  Doc. 16 at 4.

III.  *Discussion*.

Federal district courts have jurisdiction where the parties are of diverse citizenship and the matter in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  Generally speaking, "the amount claimed by the plaintiff controls if the claim is apparently made in good faith."  *Adams v. Reliance Std. Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000).  As the Supreme Court noted in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938):

> [U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount

to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

As the above passage indicates, when the amount in controversy is challenged the plaintiff need only show it is not a legal certainty that he cannot recover the jurisdictional amount. In light of this standard and the strong presumption favoring the amount claimed by the plaintiff, it is very difficult to obtain dismissal for failing to meet the amount in controversy requirement. *Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1216-17 (10th Cir. 2003). "Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." *Id*. at 1217 (citation omitted).

Plaintiffs claim they may be entitled to recover lost commissions exceeding $75,000 if a jury finds the defendant breached an implied obligation of good faith and fair dealing. Noting that every contract includes an obligation not to intentionally destroy the other party's right to receive the fruits of the contract, plaintiffs argue the evidence may show that the defendant breached the duty of good faith by temporarily ceasing to haul loads from the Pennsylvania plant for the purpose of avoiding its contract with the plaintiffs. Doc. 15 at 7. Defendant's response is essentially a factual one: "There exists not a shred of evidence that these allegations are indeed true." Doc. 16 at 4. When a defendant raises such a "factual attack" on subject matter jurisdiction (as opposed to an argument that the facts in the pleadings, even if true, are

insufficient to show jurisdiction), a district court may not presume the truthfulness of the complaint's factual allegations. *Holt v. United States*, 46 F.3d 1000, 1002-3 (10th Cir.1995). A district court has wide discretion in such circumstances to allow affidavits, other documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id*. Generally, a court's reference to evidence outside the pleadings in such circumstances does not convert the motion to a Rule 56 motion. *Id*. at 1003 (citations omitted). One exception to that principle, however, is that a court is required to convert a Rule 12(b)(1) motion to a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Id*. That appears to the case here, as defendant's jurisdictional argument goes essentially to the merits of whether or not plaintiff can prevail on a claim for breach of the duty of good faith.

The court believes *Watson v. Blankinship*, 20 F.3d 383 (10th Cir. 1994) is instructive on the appropriate course. *Blankinship* noted that "[w]hen dismissal for lack of jurisdictional amount also constitutes a decision on the merits, the court should be even more reluctant to dismiss the case." *Id*. at 388. The *Blankenship* panel upheld a district court's exercise of jurisdiction despite the defendant's argument that plaintiff had no proof of bad faith and therefore could not satisfy the amount-in-controversy requirement by recovering punitive damages. The panel said that "[a]t the pleading stage, this case seemed to raise sufficient factual questions which were tied into the merits of the claims and required a jury determination." *Id*. The panel found the plaintiff had brought the claim in good faith, notwithstanding the district court's subsequent dismissal of the claim for lack of evidence: "Just because the court dismisses certain claims, which reduce the amount of recovery, or the jury does not find plaintiff is entitled to the required amount, does not necessarily destroy jurisdiction or prove that the plaintiff acted in bad faith." *Id*.

6

at 387 (*citing St. Paul*, 303 U.S. at 292). The court distinguished between subsequent events that *change* the amount in controversy and subsequent revelations which show that the required amount was not in controversy at the time the action was brought. *Id*. The former will support the exercise of jurisdiction, while the latter will not. Additionally, the court noted, a district court's initial ruling at the pleading stage that a plaintiff has a good faith basis for satisfying the amount in controversy is not necessarily dispositive on the question of jurisdiction: "If at trial, evidence or lack thereof shows that these Appellees did not possess a good faith belief that they were entitled to the proper minimum jurisdictional amount 'and that [the] claim was therefore colorable for the purpose of conferring jurisdiction, the suit must be dismissed' for lack of subject matter jurisdiction." *Id*. at 387-88.

As indicated above, the jurisdictional issue in the instant case is intertwined with the merits of plaintiff's claim for breach of contract. The case is at the pleading stage, with only a limited amount of discovery having been completed. Defendant points out that plaintiffs obtained leave of court to conduct some discovery relating to the jurisdictional issue, and it argues that plaintiff is therefore obligated to provide an evidentiary showing of support for its claim. But given the factual nature of this jurisdictional dispute, as well as its relation to the merits of the case, the court could not require the production of further evidence without converting the instant motion to one for summary judgment and giving plaintiffs notice and an opportunity to complete all relevant discovery. The court believes it is premature to make such a conversion given the nature of the jurisdictional dispute.

The plaintiffs have cited circumstances which satisfy the court -- at least at this stage of the proceedings -- that their claim is asserted in good faith. There can be no doubt that Kansas law recognizes a claim for breach of the implied obligation of good faith. *See Daniels v. Army National Bank*, 249 Kan.

654, 658, 822 P.2d 39 (1991).  *See also Baker v. Ratzlaff*, 1 Kan.App.2d 285, 564 P.2d 153 (1977)

(applying obligation of good faith to contractual termination clause).  And plaintiffs have cited apparently

uncontroverted facts showing that defendant continued to haul loads from the Pennsylvania plant for a

period of almost one year after it ceased paying an 8% fee to plaintiffs, and that it then stopped hauling

loads less than one month after being served with the complaint and summons.  If bolstered by evidence

obtained in discovery that defendant intended to resume shipments after conclusion of the litigation, such

facts could potentially provide some support for a claim of bad faith.  Although defendant strenuously

denies any suggestion of bad faith -- and the court cannot determine at this point whether plaintiffs will

ultimately marshal sufficient evidence to support a claim -- the court cannot say it is a legal certainty that

plaintiffs cannot recover the jurisdictional amount.  In this regard the court notes there is nothing in the

parties' apparent contract that necessarily precludes recovery of the damages claimed by plaintiffs.[2]  Nor

does the present record suggest that plaintiffs have asserted such damages merely for the purpose of

manufacturing diversity jurisdiction.  Keeping in mind the Supreme Court's admonition that "[i]t must appear

to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal," the court

concludes that plaintiffs have satisfied their burden of establishing subject matter jurisdiction.

_____

[2] In its Reply Brief, defendant contends that any contract with plaintiffs was terminable at will, while recognizing that such a contention goes to the merits of the case and is not germane to the instant motion. Doc. 16 at 3.  The Reply Brief also appears to suggest that any claim by plaintiffs for future damages are precluded as a matter of law because the purported contract stated it "will last as long as shipments will be moving...," and defendant has now ceased shipments from both plants.  *Id.* at 4.  This argument does show that plaintiffs' claim is legally precluded by the contract, however, because it does not take into account the possibility that a cessation of shipments could be found to constitute a breach of the contractual duty of good faith.

IV.  *Conclusion*.

Defendant Keim TS, Inc.'s Motion to Dismiss for Lack of Jurisdiction (Doc. 8) is DENIED.  IT
IS SO ORDERED this __12th__ Day of January, 2006, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge